IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | |
|---|---|
| **SONDRA G. MATHIAS,**  Plaintiff  v.  **CAROLYN W. COLVIN,**  Acting Commissioner of  Social Security,  Defendant | Civil Action No. 2:13cv00059  **MEMORANDUM OPINION**   By:  PAMELA MEADE SARGENT  United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Sondra G. Mathias, ("Mathias"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying her claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423 and 1381 *et seq.* (West 2011 & West 2012). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge upon transfer by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642

-1-

(4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Mathias protectively filed her applications for SSI and DIB on November 20, 2009, alleging disability as of November 16, 2009, due to degenerative disc disease, osteoarthritis, depression, thyroid problems and inability to concentrate. (Record, ("R."), at 202-07, 219, 223, 266.) The claims were denied initially and upon reconsideration. (R. at 109-11, 118, 122-24, 126-31, 133-35.) Mathias then requested a hearing before an administrative law judge, ("ALJ"). (R. at 136-37.) A video hearing was held on August 14, 2012, at which Mathias was represented by counsel. (R. at 23-52.)

By decision dated August 29, 2012, the ALJ denied Mathias's claims. (R. at 11-22.) The ALJ found that Mathias met the disability insured status requirements of the Act for DIB purposes through December 31, 2010. (R. at 13.) The ALJ found that Mathias had not engaged in substantial gainful activity since November 16, 2009, the alleged onset date. (R. at 13.) The ALJ found that the medical evidence established that Mathias had severe impairments, namely degenerative disc disease, degenerative joint disease, major depressive disorder, generalized anxiety disorder, borderline intellectual functioning and pain disorder, but the ALJ found that Mathias did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 13-14.) The ALJ found that Mathias had the residual

-2-

Case 2:13-cv-00059-PMS   Document 16   Filed 03/13/15   Page 2 of 16   Pageid#: 680

functional capacity to perform simple, unskilled light work[1] that required no more than occasional interaction with the public or co-workers.[2] (R. at 15.) The ALJ found that Mathias was able to perform her past relevant work as a flagger. (R. at 20.) Based on Mathias's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that a significant number of jobs existed in the national economy that Mathias could perform, including jobs as a photocopy machine operator, a marker and a stock checker. (R. at 20-21.) Thus, the ALJ concluded that Mathias was not under a disability as defined by the Act and was not eligible for DIB or SSI benefits. (R. at 21.) *See* 20 C.F.R. §§ 404.1520(f), (g), 416.920(f), (g) (2014).

After the ALJ issued his decision, Mathias pursued her administrative appeals, but the Appeals Council denied her request for review. (R. at 1-5.) Mathias then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2014). This case is before this court on Mathias's motion for summary judgment filed July 1, 2014, and the Commissioner's motion for summary judgment filed August 4, 2014.

---

[1] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, she also can perform sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2014).

[2] The ALJ placed a number of exertional limitations on Mathias's work-related abilities. (R. at 15.) However, because Mathias does not challenge the ALJ's findings with regard to her physical impairments, the undersigned will focus on the facts relevant to Mathias's alleged mental impairments.

## II. Facts

Mathias was born in 1963, (R. at 202, 219), which, at the time of the ALJ's decision, classified her as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). Mathias has an eleventh-grade education. (R. at 228.) She has past work experience as a fence builder, a construction worker, a flagger and a fast food cook. (R. at 44-45.) Mathias testified at her hearing that she did not like being around people. (R. at 28.) She stated that she did not go around people, including her children and grandchildren. (R. at 28.) Mathias stated that she did not experience any side effects from her medication and that the medication helped "some" with her symptoms. (R. at 29.) She stated that she cried "all the time" and had no desire to do anything. (R. at 33.) Mathias stated that she had one friend that she talked to on the phone. (R. at 33.)

Vocational expert, James Williams, testified at Mathias's hearing. (R. at 49-41-50.) Williams identified Mathias's past job as a flagger as unskilled light work; her job as a fence builder and construction worker as unskilled very heavy[3] work; and her job as a fast food worker as skilled medium[4] work. (R. at 44-45.) The ALJ asked Williams to consider a hypothetical individual of Mathias's age, education and work experience, who could perform simple, routine, unskilled light work with only occasional interaction with the public and co-workers. (R. at 45.) Williams

---

[3] Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. If an individual can do very heavy work, she also can do sedentary, light, medium and heavy work. *See* 20 C.F.R. §§ 404.1567(e), 416.967(e) (2014).

[4] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can do medium work, she also can do sedentary and light work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (2014).

testified that such an individual could perform Mathias's past work as a flagger. (R. at 45-46.) Williams also identified jobs that existed in significant numbers in the national or regional economy that such an individual could perform, including jobs as a photocopy machine operator, a price changer, a marker and a stock checker. (R. at 46-47.) Williams stated that there would be no jobs available that the hypothetical individual could perform should she be absent from work more than two or three days a month and if she had no ability to demonstrate reliability. (R. at 48-49.)

In rendering his decision, the ALJ reviewed records from Wise County Public Schools; Dr. Hillery Lake, M.D., a state agency physician; Dr. Andrew Bockner, M.D., a state agency physician; Stone Mountain Health Services; B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist; Robert S. Spangler, Ed.D., a licensed psychologist; and Crystal Burke, L.C.S.W., a licensed clinical social worker.

On June 22, 2009, Mathias was seen at Stone Mountain Health Services, ("Stone Mountain"), for complaints of a "tremendous" amount of stress at work and frequent crying spells. (R. at 331-32.) She reported that she had to quit her job due to the stress. (R. at 332.) Mathias stated that all she wanted to do was stay at home due to increased anxiety and depression. (R. at 332.) She was told to contact Wise County Mental Health. (R. at 332.) On August 21, 2009, Mathias reported that she was depressed "at times." (R. at 330.) She had not yet sought behavioral health services. (R. at 330.) On October 21, 2009, Mathias admitted that she was having problems with depression, stating that she had no motivation to go anywhere or to do anything. (R. at 328.) She had not yet sought behavioral health services. (R. at 328.) Mathias was prescribed Prozac. (R. at 327.) On November

20, 2009, Mathias reported that she felt like "a new person." (R. at 325.) She stated that she had been leaving her home without worry and was able to tolerate her grandchildren. (R. at 325.)

From April 15, 2010, through November 10, 2010, Mathias began medical visits that included psychological evaluations. (R. at 418-41.) During this time, Mathias's mood and affect were normal, as were her memory, judgment and insight. (R. at 419, 422, 425, 429, 431, 434, 437, 440.) On November 10, 2010, Mathias appeared sad and was crying. (R. at 419.) She reported that her brother had died in a motor vehicle accident on November 1, 2010. (R. at 418.) Despite her grief, Mathias's orientation, memory, judgment and insight were normal. (R. at 419-20.) Xanax was added to Mathias's medication regimen. (R. at 420.)

On December 2, 2010, Mathias underwent a behavioral health consultation. (R. at 416.) Mathias's mood was depressed, and her affect was congruent; however, her memory and thought content were intact. (R. at 416.) She was diagnosed with depressive disorder, not otherwise specified; anxiety disorder, not otherwise specified; and bereavement. (R. at 416.) On December 10, 2010, Mathias reported that she was concerned over her brother's death and the care of his son. (R. at 413.) Mathias's mood and affect were normal, as were her memory, judgment and insight. (R. at 414.)

On February 9, 2011, Mathias reported that her anxiety had improved with Xanax, and her depression had improved slightly with an increased Prozac dosage. (R. at 522.) Her orientation, memory, judgment and insight were reported as normal. (R. at 523.) Again, on June 3, 2011, Mathias reported that her medications were "working" for her. (R. at 516.)

On July 28, 2011, Mathias saw Crystal Burke, L.C.S.W., a licensed clinical social worker, for Stone Mountain. (R. at 515.) Mathias reported that she had been under a lot of stress at home over the prior two to three weeks. (R. at 515.) Her house flooded earlier in the week, and she had lost several things and was concerned that her home may be a total loss. (R. at 515.) Mathias's daughter and three grandchildren also had begun living with her before the flood because her daughter had separated from her husband. (R. at 515.) Outside of her stressors, her mood and affect were normal, as were her memory, judgment and insight. (R. at 512.) Burke diagnosed anxiety, chronic pain and low weight. (R. at 513.)

On August 11, 2011, Burke completed a mental assessment indicating that Mathias had a limited, but satisfactory, ability to understand, remember and carry out simple instructions. (R. at 526-28.) She opined that Mathias had a seriously limited ability to follow work rules, to relate to co-workers, to interact with supervisors, to function independently, to maintain attention/concentration, to understand, remember and carry out detailed instructions, to maintain personal appearance, to behave in an emotionally stable manner, to relate predictably in social situations and to demonstrate reliability. (R. at 526-27.) Burke opined that Mathias had no useful ability to deal with the public, to use judgment, to deal with work stresses and to understand, remember and carry out complex instructions. (R. at 526-27.) She found that Mathias would be absent from work more than two days a month. (R. at 528.)

Progress reports from Mathias's medical visits at Stone Mountain from September 2011 through May 2012 indicate that Mathias's mood and affect were normal, as were her memory, judgment and insight. (R. at 576, 579, 582, 586,

590.) On June 14, 2012, Mathias returned for her second visit with Burke. (R. at 566.) Mathias complained of anxiety and panic. (R. at 566.) She reported that she was taking a lower dosage of Prozac than before. (R. at 566.) Burke encouraged Mathias to discuss increasing her dosage of Prozac with her primary care provider. (R. at 566.)

On July 12, 2012, Burke completed another mental assessment indicating that Mathias had a seriously limited ability to follow work rules, to relate to co-workers, to deal with the public, to use judgment, to interact with supervisors, to deal with work stresses, to function independently, to maintain attention/concentration, to understand, remember and carry out detailed and simple instructions, to maintain personal appearance, to behave in an emotionally stable manner, to relate predictably in social situations and to demonstrate reliability. (R. at 568-70.) Burke opined that Mathias had no useful ability to understand, remember and carry out complex instructions. (R. at 569.) She found that Mathias would be absent from work more than two days a month. (R. at 570.)

On May 18, 2010, B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist, evaluated Mathias at the request of Disability Determination Services. (R. at 392-98.) Lanthorn reported that Mathias displayed no signs of ongoing psychotic processes or evidence of delusional thinking. (R. at 395.) Mathias denied hallucinations. (R. at 395.) Lanthorn reported that Mathias's affect was flat and her mood depressed. (R. at 395.) Lanthorn diagnosed major depressive disorder, single episode, moderate; chronic pain disorder associated with both psychological factors and general medical conditions; and anxiety disorder, not

otherwise specified. (R. at 396.) He assessed Mathias's then-current Global Assessment of Functioning score, ("GAF"),[5] at 50[6] to 55.[7] (R. at 397.)

Lanthorn opined that Mathias's prognosis was between fair and guarded. (R. at 397.) He noted that while Mathias was responsive to anti-depressive medications, she continued to have a moderate degree of ongoing depression. (R. at 397.) Lanthorn reported that Mathias's memory was intact, but she had difficulties with concentration. (R. at 397.) Mathias's communication skills were intact. (R. at 397.) Lanthorn opined that Mathias had no limitations in learning simple tasks, but had mild to moderate limitations in her ability to learn complicated tasks, to sustain concentration and to persist at tasks. (R. at 397.) He found that Mathias had moderate limitations in her ability to interact with others on the job, including co-workers, supervisors and the general public. (R. at 397.) Lanthorn found that Mathias had mild limitations in her ability to deal with the changes in and requirements of the workplace. (R. at 398.)

On June 3, 2010, Dr. Hillery Lake, M.D., a state agency physician, completed a Psychiatric Review Technique form, ("PRTF"), indicating that Mathias had mild restrictions on her ability to perform activities of daily living. (R. at 57-58.) She found that Mathias had moderate difficulties in her ability to

---

[5] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[6] A GAF score of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning…." *See* DSM-IV at 32.

[7] A GAF score of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning...." DSM-IV at 32.

maintain social functioning and in maintaining concentration, persistence or pace. (R. at 57.) Dr. Lake found that Mathias had not experienced repeated episodes of decompensation for extended duration. (R. at 57.)

Dr. Lake completed a mental assessment indicating that Mathias was moderately limited in her ability to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors and to get along with co-workers or peers without distracting them or exhibiting behavioral extremes. (R. at 60-62.) Dr. Lake noted that Mathias's best performance would be in a work setting that required limited interaction with others. (R. at 61.)

On April 12, 2011, Lanthorn evaluated Mathias again at the request of Disability Determination Services. (R. at 493-98.) Lanthorn reported that Mathias displayed no signs of ongoing psychotic processes or evidence of delusional thinking. (R. at 496.) Mathias denied hallucinations. (R. at 496.) Lanthorn noted that Mathias was "very hostile," and began the evaluation with the statement, "I hate people." (R. at 496.) Mathias could not explain why she hated people other than they were "stupid and got on [her] nerves." (R. at 496.) Mathias had a mild degree of tremulousness. (R. at 496.) Lanthorn described Mathias's mood as agitated depression. (R. at 496.) Mathias reported no memory problems. (R. at 496.) She reported that she had difficulty concentrating. (R. at 496.) Lanthorn diagnosed major depressive disorder, single episode, moderate to severe;

generalized anxiety disorder; and chronic pain disorder associated with both psychological factors and general medical conditions. (R. at 497.) He assessed Mathias's then-current GAF score at 50 to 55. (R. at 497.)

Lanthorn opined that Mathias's prognosis was guarded. (R. at 497.) He noted that Mathias displayed short-term memory loss. (R. at 497.) Lanthorn reported that Mathias presented the majority of signs and symptoms associated with a fairly serious clinical depression, and it appeared that Mathias's anti-depressive medication was not effective. (R. at 497.) Lanthorn opined that Mathias had no limitations in learning simple tasks, but would have difficulties with more complicated work tasks. (R. at 498.) He opined that Mathias had moderate to marked limitations in her ability to interact with others in the workplace. (R. at 498.) He found that Mathias had mild to moderate limitations in her ability to sustain concentration and persist at tasks. (R. at 498.) Lanthorn found that Mathias had mild or greater limitations in her ability to deal with the changes in and requirements of the workplace. (R. at 498.)

On May 2, 2011, Dr. Andrew Bockner, M.D., a state agency physician, completed PRTF indicating that Mathias had mild restrictions on her ability to perform activities of daily living. (R. at 84-85.) He found that Mathias had moderate difficulties in her ability to maintain social functioning and in maintaining concentration, persistence or pace. (R. at 85.) Dr. Bockner found that Mathias had not experienced repeated episodes of decompensation for extended duration. (R. at 85.)

Dr. Bockner completed a mental assessment indicating that Mathias was moderately limited in her ability to understand, remember and carry out detailed

instructions, to maintain attention and concentration for extended periods, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to accept instructions and respond appropriately to criticism from supervisors and to get along with co-workers or peers without distracting them or exhibiting behavioral extremes. (R. at 87-89.) Dr. Bockner found that Mathias was markedly limited in her ability to interact appropriately with the general public. (R. at 88.) Dr. Bockner noted that Mathias's best performance would be in a work setting that required limited interaction with others. (R. at 89.)

On July 16, 2012, Robert S. Spangler, Ed.D., a licensed psychologist, evaluated Mathias at the request of Mathias's attorney. (R. at 596-600.) Spangler noted that Mathias's social skills were adequate. (R. at 598.) The Wechsler Adult Intelligence Scale - Fourth Edition, ("WAIS-IV"), was administered, and Mathias obtained a full-scale IQ score of 77. (R. at 599.) Spangler diagnosed major depressive disorder, recent, moderate to severe, and moderate anxiety disorder, not otherwise specified. (R. at 600.) Spangler assessed Mathias's then-current GAF score at 50 to 55. (R. at 600.)

Spangler completed a mental assessment indicating that Mathias had a limited, but satisfactory, ability to maintain attention and concentration, when medicated, and to understand, remember and carry out simple instructions. (R. at 601-03.) He opined that Mathias had a seriously limited ability to follow work rules, to relate to co-workers, to deal with the public, to use judgment, to interact with supervisors, to function independently, to understand, remember and carry out detailed instructions, to maintain personal appearance, to behave in an emotionally

-12-

stable manner and to relate predictably in social situations. (R. at 601-02.) Spangler opined that Mathias had no useful ability to deal with work stress, to understand, remember and carry out complex instructions and to demonstrate reliability. (R. at 601-02.) He found that Mathias would be absent from work more than three days a month. (R. at 603.)

### III. Analysis

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2014). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2014).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2011 & West 2012); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir.

1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

The ALJ found that Mathias had the residual functional capacity to perform simple, unskilled light work that required no more than occasional interaction with the public or co-workers. (R. at 15.) In her brief, Mathias argues that the ALJ erred by improperly determining her mental residual functional capacity. (Plaintiff's Memorandum In Support Of Her Motion For Summary Judgment, ("Plaintiff's Brief"), at 5-7.) Mathias further argues that the ALJ failed to address all of the evidence in the record and indicate the weight given to such evidence. (Plaintiff's Brief at 7-8.) In particular, Mathias contends that the ALJ failed to explain his reason for rejecting Lanthorn's finding that she had marked limitation in her ability to interact with others. (Plaintiff's Brief at 7-8.) Mathias does not challenge the ALJ's findings with regard to her physical residual functional capacity.

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

A medical opinion is entitled to greater weight when it is supported by relevant evidence, "particularly medical signs and laboratory findings," and when it is consistent with the "record as a whole." 20 C.F.R. §§ 404.1527(c)(2)-(4). 416.927(c)(2)-(4) (2014). Based on my review of the record, I find that substantial evidence exists to support the ALJ's finding with regard to Mathias's mental residual functional capacity. The ALJ considered the opinion evidence of record. (R. at 18-19.) The ALJ noted that he was giving "some" weight to Lanthorn's opinion and "little" weight to Burke and Spangler's opinions. (R. at 18-19.) The ALJ noted that Lanthorn was an acceptable medical source who had examined Mathias twice. (R. at 18.) The ALJ stated that although Lanthorn's opinion had some variability, it generally found support in the medical evidence of record, with the exception of marked limitations in social interaction. (R. at 18.)

The ALJ gave Burke's and Spangler's opinions "little" weight because they were not supported by the medical evidence as a whole. (R. at 18-19.) On the day that Burke provided her most recent opinion, Mathias's treatment records revealed that her mood, affect, orientation, memory, judgment and insight were normal. (R. at 573.) Burke found that Mathias had no useful ability to understand, remember and carry out complex instructions and a seriously limited ability in all other areas. (R. at 568-69.) Spangler found that Mathias related well with adequate social skills; she was an adequate historian; her associations were logical; she understood the instructions for each task that she was asked to do; she demonstrated good concentration and was appropriately persistent on tasks; and her pace was adequate. (R. at 596-99.) The ALJ found that Burke's and Spangler's assessments were contrary to Lanthorn's assessment, as well as the state agency psychologists' findings. (R. at 18-19.) While state agency physician, Dr. Bockner, found that Mathias had marked limitations in her ability to interact with the general public, he

opined that Mathias's best performance would be in a work setting that required limited interaction with others. (R. at 88-89.)

In addition, the medical evidence shows that Mathias made numerous visits to Stone Mountain, and progress notes show that her mood, affect, orientation, memory, insight and judgment were repeatedly normal. (R. at 414, 416, 419, 422, 425, 429, 431, 434, 437, 440, 512, 517, 520, 523, 576, 579, 582, 586, 590.) Spangler found that Mathias's social skills were adequate and that she had the judgment and skills necessary to handle her own finances. (R. at 598.) Lanthorn found that Mathias's communication skills were intact. (R. at 397.) Mathias reported that she got along with people in authority, and she was never fired or laid off from a job because of problems getting along with other people. (R. at 250, 282.) Furthermore, the record shows that Mathias showed improvement in her symptoms with medication treatment. (R. at 325, 330, 397, 432, 519, 522.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir. 1986).

Based on this, I find that substantial evidence supports the weighing of the evidence by the ALJ. That being so, I further find that substantial evidence supports the ALJ's finding as to Mathias's mental residual functional capacity and his finding that Mathias was not disabled. An appropriate order and judgment will be entered.

DATED: March 13, 2015.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE

-16-

Case 2:13-cv-00059-PMS   Document 16   Filed 03/13/15   Page 16 of 16   Pageid#: 694